IN THE UNITED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| AVANGARDCHIK, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: 8:20-cv-00595 |
| PETER STURNIALO, REAL HOLDING SERVICES, INC., and N.J.S.N. HOLDINGS, INC. | ) |
| Defendants. | ) |

**COMPLAINT**

AVANGARDCHIK, LLC ("Avangardchik") by its undersigned attorneys, complaining of Defendants PETER STURNIALO ("Sturnialo"), REAL HOLDING SERVICES, INC. ("Real Holdings"), and N.J.S.N. Holdings, Inc. ("N.J.S.N.") (collectively "Defendants") states and alleges:

PARTIES

1. Plaintiff Avangardchik is a Florida Limited Liability Company with its principal place of business in Hillsborough County, Florida.

2. Defendant Sturnialo is an individual, and can be located at 69 Token St., Staten Island, New York 10308.

3. Defendant Real Holdings is a New York corporation.

4. Defendant N.J.S.N. is New York corporation.

## JURISDICTION AND VENUE

5. This action involves a claim for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

6. Jurisdiction of this Court and venue are proper under 15 U.S.C. § 78aa(a).

7. The Court has supplemental jurisdiction over state law claims made hereunder pursuant to 28 U.S.C. § 1367.

8. Furthermore, the Court has diversity of citizenship jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

9. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and interstate emails.

## GOVERNING LAW

10. 15 U.S.C. § 78j(b) ("Section 10(b) of the Exchange Act") makes it unlawful

> for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce or the mails, or of any facility of any national securities exchange . . . To use or employ, in connection with the purchase or sale of any [security] any manipulative or deceptive devise or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to the public interest or for the protection of investors.

11. The Securities Exchange Commission has promulgated 17 C.F.R. § 240.10b-5 ("Rule 10b-5") which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,

      (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

      (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

12. Fla. Stat. § 517.301 which is part of the Florida Securities and Investor Protection Act provides as follows:

    (1) It is unlawful and a violation of the provisions of this chapter for a person:

      (a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:

        1. To employ any device, scheme, or artifice to defraud;

        2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

        3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

13. A breach of contract action in Florida requires the Plaintiff to show the existence of a contract, a breach of that contract by the Defendant(s), and damages incurred by the Plaintiff as a result of the Defendant(s) breach.

14. In Florida, the elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty, and (2) the breach of that duty such that it is the proximate cause of the plaintiff's damages.

15. Florida law provides a cause of action for fraudulent misrepresentation with following elements: (1) a false statement concerning material fact, (2) the defendant's knowledge that the representation is false, (3) an intention to induce another to act on said misrepresentation, and (4) an injury by the party relying on said misrepresentation. *Johnson v. Davis*, 480 So. 2d 625, 627 (Florida 1985).

## SUBSTANTIVE ALLEGATIONS

**Facts Common to All Counts**

16. Avangardchik entered into a series of partnership agreements with Real Holdings and N.J.S.N. A copy of said partnership agreements is attached hereto as Exhibits 1 thru 9 (collectively referred to as the "Partnership Agreements"). Exhibits 1 and 2 are partnership agreements between Avangardchik and N.J.S.N. Exhibits 3 thru 9 are partnership agreements between Avangardchik and Real Holdings.

17. All the Partnership Agreements had substantially similar terms. They provided for Avangardchik to purchase an equitable and financial interest in real estate properties. In each case Avangardchik was purchasing twenty or twenty-five percent (20% or 25%) of the property that is the subject of each individual agreement. Avangardchik would receive a monthly payment for rent collected for each property and if any of the properties were sold, then Avangardchik would be entitled to its percentage (20% or 25%) of the net proceeds from the sale of said property.

18. At all material times Sturnialo controlled Real Holdings and N.J.S.N. The Plaintiff never dealt with anyone from either of those two companies other than Sturnialo.

19. Below is a table which addresses each of partnership agreements one at a time and

summarizes the actions that the Defendants took in regard to each agreement:

| **Exhibit** | **Parties to Contract** | **Address of Investment Property** | **Summary** |
|---|---|---|---|
| 1 | Avangardchik and N.J.S.N. | 3630 16th Ave. S. St. Petersburg, FL | Avangardchik invested $7,000 in this property which was purchased on September 15, 2016.  Without informing Avangardchik, N.J.S.N. and Sturnialo sold said property on March 8, 2018. N.J.S.N. and Sturnialo did not pay my client the percentage he was entitled to |
| 2 | Avangardchik and N.J.S.N. | 3620 16th Ave. S. St. Petersburg, FL | Avangardchik invested $10,000 in this property which was purchased on September 15, 2016.  Without informing Avangardchik, N.J.S.N. and Sturnialo sold said property on April 6, 2018.  N.J.S.N. and Sturnialo did not pay Avangardchik the percentage he was entitled to. |
| 3 | Avangardchik and Real Holdings | 535 27th St. S St. Petersburg, FL | Avangardchik invested $7,500 in this property which was purchased on August 14, 2017.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on June 8, 2018.  Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |

| | | | |
|---|---|---|---|
| 4 | Avangardchik and Real Holdings | 2539 Lakeview St. Lakeland, FL | Avangardchik invested $20,000 in this property which was purchased on July 31, 2017.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on October 19, 2019.  Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |
| 5 | Avangardchik and Real Holdings | 1033 Vine St. Lakeland, FL | Avangardchik invested $20,000 in this property which was purchased on August 21, 2017.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on November 30, 2017.  Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |
| 6 | Avangardchik and Real Holdings | 334 C Street Lake Wales, FL | Avangardchik invested $20,000 in this property which was purchased on July 5, 2017.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on September 19, 2018.  Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |
| 7 | Avangardchik and Real Holdings | 1075 Idylwild Dr., Winter Haven, FL | Avangardchik invested $20,000 in this property which was purchased on October 6, 2017.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on March 8, 2018.  Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |
| | Avangardchik and Real Holdings | 404 E Virginia Ave. Tampa, FL 33602 | Avangardchik invested $7,500 in this property which was purchased on June |

| 8 | | | 17, 2016.  Without informing Avangardchik, Sturnialo and Real Holdings sold said property on April 16, 2018. Sturnialo and Real Holdings did not pay Avangardchik the percentage he was entitled to. |
|---|---|---|---|
| 9 | Avangardchik and Real Holdings | 516 E Laura St., Plant City, FL | Sturnialo and Real Holdings solicited and accepted Avangardchik' investment in said property on November 13, 2017. Avangardchik invested $10,000 in said property.  However, Sturnialo and Real Holdings never purchased the property and never returned the investment. |

20.     In regards to Exhibits 1 and 2, Sturnialo and N.J.S.N. accepted Avangardchik's investment and used said funds to purchase real estate.  In both cases, Sturnialo and N.J.S.N. sold said real estate without informing Avangardchik and failed to remit any of the proceeds to Avangardchik.

21.     In regards to Exhibits 3 thru 8, Sturnialo and Real Holdings accepted Avangardchik's investment and used said funds to purchase real estate.  In all those instances, Sturnialo and Real Holdings sold each of the properties purchased without informing Avangardchik and without paying Avangardchik any portion of the proceeds secured.  To conceal the fact that they had sold the properties that were the subject of the partnership agreements, Sturnialo and Real Holdings continued to pay Avangardchik what Avangardchik believed to be its portion of rental proceeds for each property.

22.     In regards to Exhibit 9, Sturnialo and Real Holdings solicited and accepted Avangardchik's investment and represented that said funds would be used to purchase a particular property, 516 E. Laura St., Plant City, FL.  Sturnialo and Real Holdings never

purchased the property and never returned Avangardchik's investments. Instead, Sturnialo and Real Holdings used Avangardchik's funds for their own purposes.

23. Each of the Partnership Agreements contain a provision which grants Avangardchik a right of first refusal on each real estate property invested in. The Defendants violated these provisions for each property sold.

24. In or around July 2019 Sturnialo and Real Holdings sent a letter to Avangardchik which stated in part:

> We are sorry to report that the company has been experiencing some very bad times for more then [sic] 24 months. This including huge financial and real estate lossess [sic]. . . . We are left with no choice but to file a disolution [sic] and close the company, these chain of events have left us with no other choice. There are no assets so we can avoid filing bankruptcy, we don't want our investors open to paying taxes, penalties, and interest on money they received. . . .

A copy of said letter is attached hereto as Exhibit "10."

25. Together, the Defendants' actions establish a fraudulent pattern by which the Defendants secured investments from Avangardchik, used said investment to purchase real estate, and then sold said real estate and kept the funds for themselves. In one case, the Defendants took Avangardchik's investment and just kept the money for their own purposes rather than purchasing the property promised.

26. Despite demand, the Defendants have not paid any funds that they owe Avangardchik.

27. Sturnialo continues his fraudulent scheme. Sturnialo now uses a business entity named NGS Business Opportunities, Inc., a New York corporation. In the weeks and months preceding the filing of this action, Sturnialo solicited new investors online using substantially the same agreement used with Avangardchik.. Furthermore, Sturnialo fails to disclose to potential

new investors that he has lost investments for other investors in the past.

28. Neither Real Holdings nor N.J.S.N. were ever authorized to conduct business in Florida. Therefore, Sturnialo is personally liable for all the actions and non-actions of said companies.

## Count I

### Violation of Section 10(b) and Rule 10b-5

29. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

30. This is a count under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all three Defendants.

31. The Partnership Agreements and the investments made thereunder are considered securities under applicable law. *See* 15 U.S.C. § 78c(a)(10).

32. The Defendants used the instrumentalities of interstate commerce and the U.S. Mail to:

    (a) employ a scheme to defraud Avangardchik,

    (b) make untrue statements of material facts and omitted to state material facts necessary to make statements already made not misleading, and

    (c) engage in acts and practices which operated as fraud or deceit upon Avangardchik.

33. The Defendants sold investment properties which Avangardchik has invested in without telling Avangardchik.

34. The Defendants made monthly payments to Avangardchik representing that said

payments were for rents received from the investment properties despite some of the properties for which rents were being remitted already being sold.

35. Sturnialo and Real Holdings solicited and accepted investments in a property that they never purchased.

36. The Defendants made false statements in soliciting the investment of Avangardchik.

37. Upon soliciting Avangardchik's investments, the Defendants knew that they would not comply with the Partnership Agreements and would not pay Avangardchik as promised.

## Count II

### Violation of Fla. Stat. § 517.301

38. Plaintiff repeats and realleges paragraphs 1 thru 26 above as if fully set forth herein.

39. This is an action under Fla. Stat. § 517.301 against all three Defendants.

40. In connection with the rendering of investment advice and in connection with the offer, sale, or purchase of an investment or security, the Defendants:

    (a) employed a device, scheme, and/or artifice to defraud,

    (b) obtained money by means of untrue statements of material facts and omissions of material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or

    (c) engaged in practices and courses of business which operated as fraud and deceit upon Avangardchik.

41. The Defendants sold investment properties which Avangardchik has invested in without telling Avangardchik.

42. The Defendants made monthly payments to Avangardchik representing that said payments were for rents received from an investment properties when the subject investment properties had been sold.

43. Sturnialo and Real Holdings solicited and accepted investment in a property that they never purchased.

44. The Defendants made false statements in soliciting the investment of Avangardchik.

45. Upon soliciting Avangardchik's investments, the Defendants knew that they would not comply with the Partnership Agreements and would not pay Avangardchik as promised.

## Count III

### Breach of Fiduciary Duty

46. Plaintiff repeats and realleges paragraphs 1 thru 26 above as if fully set forth herein.

47. This is an action for breach of fiduciary duty against Sturnialo.

48. Sturnialo owed Avangardchik a fiduciary duty as he managed Avangardchik's investment pursuant to all nine Partnership Agreements.

49. Sturnialo breached said duty (1) by making misrepresentations, (2) by omitting material facts, and (3) by keeping funds belonging to Avangardchik for himself.

50. Specifically, Sturnialo sold investment properties without telling Avangardchik

and without giving Avangardchik the proceeds thereof.

51. To hide his deceit, Sturnialo remitted supposed rental payments for properties he had already sold.

52. Sturnialo also solicited and accepted an investment by Avangardchik to purchase the property that is the subject of Exhibit "9" and then failed to purchase said property and failed to return said investment to Avangardchik.

## Count IV

### Breach of Contract

53. Plaintiff repeats and realleges paragraphs 1 thru 26 above as if fully set forth herein.

54. This is an action for breach of contract against all three Defendants.

55. The parties entered into a series of nine contracts all of which are attached as exhibits 1 thru 9. Sturnialo is personally responsible for these contracts as neither entity was registered to do business in Florida.

56. The Defendants breached said contracts by:

   a. failing to pay Avangardchik the portion proceeds from the sale of each real estate property that it was entitled to,

   b. failing to give Avangardchik notice that each property was to be sold and by denying Avangardchik it's right of first refusal for each property, and

   c. with respect to Exhibit "9," failing to use the investment funds to purchase the investment party promised.

## Count VI

### Fraudulent Misrepresentation

57. Plaintiff repeats and realleges paragraphs 1 thru 26 above as if fully set forth herein.

58. This is an action for fraudulent misrepresentation against all three defendants.

59. The Defendants made false statements of material fact and intentionally omitted material facts in order to defraud Avangardchik.

60. The Defendants made said representations knowing they were false.

61. The Defendants intended to induce Avangardchil to act on said misrepresentations.

62. Avangardchik has been injured by said misrepresentations.

63. When soliciting Avangardchik's investments, the Defendants knew that they would not comply with the Partnership Agreements and would not pay Avangardchik as promised.

64. Specifically the Defendants:

   a. sold the investment properties Avangardchik invested in without telling Avangardchik,

   b. made monthly payments to Avangardchik representing that said payments were for rents received from the investment properties,

   c. solicited and accepted investment in a company that they never purchased, and

   d. made false statements in soliciting the investment of Avangardchik.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court determine the amounts owed to the Plaintiff, enter judgment in favor of the Plaintiff and against the Defendants, award the Plaintiff attorney's fees and costs if allowed by law, and for any further relief this Court deems just and proper.

## PUNITIVE DAMAGES DEMAND

FURTHERMORE, the Plaintiff requests that the Court enter a judgment against the Defendants for Punitive Damages.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 13th day of March, 2020.


Respectfully submitted,


　　/s/ Felix G. Montañez　　　　
Felix G. Montañez, Esq.
Fla. Bar No. 99892
2511 N. Howard Avenue
Tampa, FL 33607
service@montanezlawfirm.com
813-816-2827